This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39878**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**DAVID CRANE,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Carrie Cochran, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}**    Defendant David Crane appeals his convictions for fourth degree felony child solicitation by electronic communication device, contrary to NMSA 1978, Section 30-37-3.2(A)[1] (2007); and third degree felony child solicitation by electronic communication

---

[1]The criminal information in this matter, as well as Defendant's judgment and sentence, both cite Section 30-37-3.2(A) as the statutory source for Count 1 of Defendant's charges. However, as Defendant points out on appeal, Subsection (A) of Section 30-37-3.2 merely provides definitional language, while the actual

device with a meeting, contrary to Section 30-37-3.2(C)(1). Defendant argues that (1) his two convictions under Section 30-37-3.2 violate principles of double jeopardy; and (2) the district court erred in admitting certain evidence at trial because the evidence was not properly authenticated. We affirm.

**I.      Defendant Did Not Adequately Develop an Argument to Support His Double Jeopardy Claim**

**{2}** Defendant was charged with two crimes defined under the same statute: Section 30-37-3.2. This statute criminalizes the sexual solicitation of minors by means of an electronic communication device. Subsection (B) of the statute provides penalties for solicitation limited to communication, while Subsection (C) provides higher penalties for solicitation that also results in a meeting. The charges in this case arose from a series of social media-based electronic message exchanges between Defendant and a police deputy posing as a thirteen-year-old. The exchanges took place over several days, beginning on January 18, 2019, and concluding on January 30, 2019, when Defendant set up a meeting with his interlocutor and was promptly arrested by police when he arrived at the meeting spot.

**{3}** At the close of the State's case, Defendant moved for a directed verdict, arguing that he could not be convicted separately under two different subsections of this statute because the State had not shown that there were "two separate incident[s]" at issue in this case, and that the greater charge—the third degree felony under Subsection (C) of the statute—was "just a step up" for sentencing purposes. Defendant added that the criminal information filed in this matter, which was never amended, stated that both counts against Defendant took place "on or about" January 18, 2019, and the evidence presented did not support any meeting on that day. The district court denied Defendant's motion, stating, inter alia, that "the chat ended and started up again, so I think there's sufficient time to constitute two separate offenses." Both charges went to the jury, and Defendant was convicted on both counts.

**{4}** In his brief in chief, Defendant argues that his two convictions under Section 30-37-3.2 violate principles of double jeopardy because they result from a single continuous course of conduct. In such "unit of prosecution" cases, we follow a two-step analysis to determine whether double jeopardy principles prohibit multiple charges. *See generally State v. DeGraff*, 2006-NMSC-011, ¶¶ 25, 32, 139 N.M. 211, 131 P.3d 61. First, we "inquire whether the Legislature intended punishment for the entire course of conduct or for each discrete act." *Id.* ¶ 32 (alteration, internal quotation marks, and citation omitted). If a statute is unambiguous in its creation of separate offenses, we simply follow the statute. *Id.* Otherwise, we move to step two, in which we analyze

crimes of the statute (with their associated penalties) are found in Subsections (B) and (C). Despite this technical imprecision, throughout this case, the parties appear to have litigated under the assumption that Count 1 was brought under Subsection (B)(1) (solicitation of a child between thirteen and sixteen by electronic communication device with no meeting), which is the only fourth degree felony in the statute. In any event, Defendant does not argue that this imprecision is an independent basis for the reversal of his conviction under Count 1.

whether the allegedly separate offenses are separated by "sufficient indicia of distinctness to justify multiple punishments under the same statute." *State v. Bernal*, 2006-NMSC-050, ¶ 14, 140 N.M. 644, 146 P.3d 289 (internal quotation marks and citation omitted).

**{5}** Here, Defendant's "unit of prosecution" analysis is underdeveloped. As it relates to the first step of the "unit of prosecution" analysis, Defendant simply quotes the statute, before stating that a "plain reading" thereof indicates that a defendant cannot be charged under both Subsections (B) and (C) of Section 30-37-3.2 based on the same conduct. Regardless of whether we are swayed by this terse statutory analysis, Defendant does not offer sufficient analysis to support his argument under step two— that the offenses are not distinct. To determine whether offenses are distinct, our courts look to multiple factors, including the temporal proximity of the acts, the locations of the acts, intervening events, sequencing, evidence of separate intent for the acts, and the number of alleged victims. *See Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624. Defendant fails to explain how these factors apply to the evidence in his case. He merely states that "[t]he statute . . . does not permit separate convictions because the meeting did not occur on the first day that [the Deputy] made contact with [Defendant]." This conclusory assertion relates to the temporal proximity of the acts, but Defendant's briefing falls short of addressing the factors precedent requires us to consider.[2] Defendant does not provide a fully developed "unit of prosecution" analysis, and thus we decline to consider the merits of his argument. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them. This creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." (citation omitted)).

## II.      The District Court Did Not Abuse Its Discretion in Admitting the Screenshots From the "Whisper" Application

**{6}** Defendant's second argument is that the screenshots from the electronic conversation between the Deputy and himself were erroneously admitted by the district court because they lacked foundation and thus were not properly authenticated. The State's Exhibit 1 contained twenty pages of screenshots, nineteen of which came from the Deputy's cell phone, with the final page coming from a screenshot obtained from Defendant's cell phone. This exhibit was admitted based on foundation given by a Detective who collaborated with the Deputy on the investigation that led to Defendant's arrest. The screenshots depicted an exchange that took place on an anonymous social media application called "Whisper."

---

[2]Nowhere in the argument sections of his brief in chief or reply brief does Defendant discuss the district court's determination that Defendant engaged in "two separate offenses" due to the stop-and-start nature of the electronic conversation.

**{7}**     Questions have arisen about the legal requirements for properly authenticating social media evidence because of certain characteristics of social media platforms, including their relative anonymity and the potential for fraud or falsehood. Despite these characteristics, there are no heightened authentication requirements for social media evidence under New Mexico law: "the authentication of social media evidence is governed by the traditional authentication standard set out in Rule 11-901 [NMRA], which requires the proponent to offer evidence sufficient to support a finding that the evidence is what the proponent claims it is." *State v. Jesenya O.*, 2022-NMSC-014, ¶ 18, 514 P.3d 445 (alteration, internal quotation marks, and citation omitted). Our standard of review for this type of evidentiary ruling is abuse of discretion and, accordingly, we will only reverse the district court's ruling if it "is clearly against the logic and effect of the facts and circumstances of the case." *Id.* ¶ 10 (internal quotation marks and citation omitted). "In the authentication context, there is no abuse of discretion when the evidence is shown by a preponderance of the evidence to be what it purports to be." *Id.* (internal quotation marks and citation omitted).

**{8}**     We conclude that no abuse of discretion occurred here. Importantly, Rule 11-901 does not require the proponent of the evidence to "demonstrate authorship of the evidence conclusively." *Jesenya O.*, 2022-NMSC-014, ¶ 18. Rather, the proponent must merely provide enough evidence "to support a finding that the item is what the proponent claims it is." Rule 11-901(A). To authenticate an exhibit for the purpose of admitting it into evidence, the question for the judge is whether a reasonable jury could find the exhibit to be what the movant says it is; the conclusive determination of authenticity, on the other hand, is left to the jury. *See State v. Romero*, 2019-NMSC-007, ¶ 41, 435 P.3d 1231.

**{9}**     In this case, the Detective—who provided the foundation for the screenshot exhibit—testified that he had participated with the Deputy throughout the investigation involving Defendant, he had personally reviewed the specific language of the messages while the exchange was ongoing, and that he himself had taken the screenshots from both phones, one of which found on Defendant when he was arrested. We believe this testimony adequately supports the threshold authentication finding under Rule 11-901. Because the Detective's testimony was sufficient to support a finding that the screenshots depicting the Whisper exchange between Defendant and the Deputy were, more likely than not, what they purported to be, we conclude that the district court did not abuse its discretion by admitting the screenshots. *See Jesenya O.*, 2022-NMSC-014, ¶ 32.

**CONCLUSION**

**{10}**     We affirm.

**{11}     IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**I CONCUR:**

**GERALD E. BACA, Judge**

**JACQUELINE R. MEDINA, Judge (specially concurring).**

**MEDINA, Judge (specially concurring).**

**{12}** I concur in the results reached by the majority. However, I do so for a different reason on Defendant's double jeopardy argument. I disagree with the majority that Defendant's double jeopardy argument involving the unit of prosecution of Section 30-37-3.2 is underdeveloped such that we should not reach the merits of the argument. Although the argument is sparse, Defendant provided enough to require this Court's review. I write separately to summarize my determination there was a sufficient indicia of distinctness between Defendant's acts to support two separate convictions under Section 30-37-3.2.

**{13}** "The relevant inquiry in a unit of prosecution case is whether the Legislature intended punishment for the entire course of conduct or for each discrete act." *State v. Bernard*, 2015-NMCA-089, ¶ 17, 355 P.3d 831 (citation omitted) (text only). First, "we look to the language of the criminal statute to determine whether the Legislature has defined the unit of prosecution," and if so, "[o]ur inquiry is complete if the unit of prosecution is spelled out in the statute." *Id.* Second, if the language of the statute is ambiguous, we must "determine whether a defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments under the same statute." *Id.* (internal quotation marks and citation omitted).

**{14}** Defendant argues on appeal that his convictions violate double jeopardy because they originate from a single continuous course of conduct. Although framed under the first step of the above analysis—ambiguity in the statutory language—Defendant's argument is better understood as a challenge under the second step—assessing the indicia of distinctness. *See id.* Assuming that the language of Section 30-37-3.2 is ambiguous, the record demonstrates sufficient indicia of distinctness between Defendant's acts to support multiple convictions.

**{15}** As the majority observes, we determine if offenses are distinct by looking at multiple factors: (1) temporal proximity of the acts, (2) locations of the acts, (3) intervening events, (4) sequencing, (5) evidence of separate intent for the acts, and (6) the number of alleged victims. *See Herron*, 1991-NMSC-012, ¶ 15. Defendant relies on the conclusory assertion that his actions amounted to a single course of conduct rather than analyzing the *Herron* factors. The State, on the other hand, engaged in what I found to be a persuasive analysis.

**{16}** Here, the evidence presented at trial supports holding Defendant committed two separate, distinct acts of solicitation. Three days separated Defendant's first solicitation with undercover officers from January 18 to January 22, and Defendant's second

solicitation on January 25, leading to Defendant's attempt to meet in person on January 30. Defendant started the first solicitation with a general invitation on the Whisper application to chat online with Defendant, whereas Defendant specifically targeted the undercover officers for the second solicitation. The State presented evidence that Defendant deleted and then redownloaded the Whisper application between the two solicitations, indicating both an intervening event and a separate intent to solicit. Finally, Defendant requested unique sexual acts in each solicitation. Therefore, I would hold that a sufficient indicia of distinctness existed between Defendant's acts to support multiple convictions.

**JACQUELINE R. MEDINA, Judge**